# Bishop, Daneman & Simpson, LLC

Attorneys at Law

2 North Charles Street
Suite 500
Baltimore, Maryland 21201

Bryan A. Bishop
David Daneman*
Lori Simpson*

Mary Albrecht Jordan
Michael S. Karas (of counsel)
(*MD and DC)

October 31, 2007

Office 410-385-5385

Facsimile 410-385-1514

www.bdslegal.com

Writer's direct dial
410-385-5385
bbishop@bdslegal.com

Worthington H. Talcott, Jr. Esquire
Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
11921 Rockville Pike, Third Floor
Rockville, Maryland 20852

**VIA FACSIMILE**
**301-231-0935**
**AND FIRST-CLASS MAIL**

    Re:     **23349 Cove Road (Somerset County, Maryland)**
               **3946 Robinson Neck Road (Dorchester County, Maryland)**

Dear Mr. Talcott:

    As I have previously informed you, I am representing Charles Clarkson and Janet Sydnor with regard to the pending foreclosure of their properties referenced above. My clients have provided me with copies of your two letters, each dated October 3, 2007, regarding their alleged default under the loans, dated November 30, 2005 and February 25, 2006.

    I have reviewed the documents associated with the aforementioned loans. I find many discrepancies including, but not limited to:

1. Despite the titling of the loan documents, the loans were not commercial loans - in November 2005, at the time of the first loan, my clients were living in the property on Cove Road. In February 2007, at the time of the second loan, my clients moved from the Cove Road property to the Robinson Neck Road property. The Lenders were very much aware of this;

2. The two loans may not be governed by Credit Grantor Closed End Credit Provisions of the Commercial Law Article of the Maryland Code (Section 12-1001 et seq. (despite language in the loan documents that the loans were made pursuant to said provisions) - I do not have verification that the various lenders in these transactions (CJR Duck Associates, LLC, TrustCapital Investments, LLC, and Lakefront Investors, LLC) are indeed Credit Grantors as defined in Section 12-1001(g). Are they licensed per Title 11, Subtitle 5 of the Financial Institutions Article or are they exempt from such licensing requirement?

## BISHOP, DANEMAN & SIMPSON, LLC
Worthington H. Talcott, Jr. Esquire
October 31, 2007
Page Two

3. The two loans may be governed by Section 12-101 et seq., if Credit Grantor Closed End Credit Provisions do not apply - If so, only Section 12-103(a) would govern the interest rate allowed (given the various terms and conditions throughout the loans) which would be up to 24%, but with restrictions on other loan terms;

4. The late fee of 10% (on the missed balloon payment) may be usurious;

5. The interest rate increase (default rate) has been prematurely commenced (per the payoff statement issued on both loans) at the one year anniversary of the notes. Per the terms of the notes, the default rate, if allowed by law, does not commence until the borrowers' (alleged) default continues for sixty days.

6. The requirement that my clients prepay interest for one year (with funds that they actually borrowed through the loans) creates interest on interest. Consequently, the effective interest rate is higher than the 18% interest initially charged;

7. Pursuant to Section 12-108 of the Commercial Law Article, the lenders may not have been able to charge points unless the lenders can show the loans fall under the exceptions noted. Or, in the alternative, the points charged (7% on the first loan and 6.75% on the second loan), when taking into consideration the interest rate charged, the prepayment of interest for one year and other fees charged, may exceed the maximum interest rate allowed by Maryland law;

8. My clients were required to sign affidavits stating that the loans were for commercial purposes only when they clearly were not - Pursuant to Section 12-106.1 of the Commercial Law Article, the lenders' action of willfully requiring such statements knowing full well same was not true may result in the lenders facing forfeiture of certain amounts related to improperly charged interest and charges; and

9. On the first loan, my clients paid $3,800.00 in various fees including attorney document preparation, appraisal review fee, doc review fee, wire check fee, lender inspection fee, loan commitment fee, FEMA fee, Loan Administration fee and credit report fee - some of these charges may be considered to be interest requiring an analysis of the actual interest charged to my clients and whether same is ultimately usurious;

## BISHOP, DANEMAN & SIMPSON, LLC

Worthington H. Talcott, Jr. Esquire
October 31, 2007
Page Two


My clients assert that the lenders in these transactions may have violated laws that relate to the loan. Please accept this letter as notice that my clients dispute the validity of the debt under both loans. A foreclosure proceeding should not be initiated until these issues are resolved. My clients are attempting to refinance their debt, and when new financing is finalized, the lenders will be contacted accordingly. Negotiations regarding the balance due will be attempted. If negotiations are not successful, litigation may be necessary to have a court determine the amounts that are due.

I continue to review these two loans for full compliance under the state and federal law.

Please have the lenders review this letter and respond accordingly.

Very truly yours,

Bryan A. Bishop

cc:   Mr. Charles Clarkson
      Ms. Janet Sydnor

**From:** "FSDS, LLC" <fsdsllc@msn.com>
**To:** <bbishop@bdslegal.com>
**CC:** <janet21821@comcast.net>, "'Debbi Chapman'" <debbi@chapmanmortgagegroup.com>, "'Steve Knott'" <smknott@mac.com>
**Subject:** Sydnor-Clarkson
**Date:** Wednesday, March 19, 2008 1:40:16 PM

Hi Mr. Bishop,
I am working with Janet and Charles, especially looking over the payoff situation. Janet and I just talked and she felt I should put together an email for you to review the project status. Janet did explain that she has been working with a Mr. Vito Pache on a Bridge Loan to resolve the immediate situation. I am working with a lender on the long term project development for Deal Island and Taylor Island, which would allow an exit strategy for Mr. Pache's Bridge Loan. Here are my thoughts after reviewing the three notes signed by Janet and Charles:

1. Deal Island – Appears the principal balance of the note is $461,250 ($562,500 – 101,250 for 12 months of interest charged on line 901 on HUD) at an interest rate of 18% per annum is a monthly interest gain of $6,918.75, over 28 months since the note began and through the end of March 2008 totals $193,725 of interest. Adding the interest and principal totals $654,975.

2. Taylor and Deal Islands Cross-collaterization – Appears the principal balance was $1,025,000 ($1,250,000 - $225,000 for 12 months interest charged line 901 on HUD) at an interest rate of 18% per annum is a monthly interest gain of $15,375 over 25 months since the note began through the end of March 2008 totals $384,375. Adding the interest and principal totals $1,409,375

3. Auction Note for Deal Island – due in April 2008 for $36,000.

Calculating a payoff of all three notes through March 2008:
$   654,975.00
$1,409,375.00
$    36,000.00
$2,100,350.00

I have been informed that only principal balance can be charged interest and not interest on interest as it appears in the Notes. I do know that a one-time late fee is allowed, along with other fees to include payoff statement generation, wire, etc. Janet and Charles did agree to the 18% rate, so I calculated the payoff using that rate. I believe this is a good start to identifying a realistic payoff, but by no means do I think once additional fees are added by the lender will this be a final number.

Moving forward my plan is to talk with Mr. Pache to explain my actions to continue to work on providing long term financing for the projects and see if it meets with his Bridge Loan exit strategy. It will also provide me a chance to understand his terms. Please let me know your thoughts and how I can be of further assistance to you.

Thank you,
Fred

Fred Sipes



# Country Properties, Inc.

204 N. Washington Street
Easton, MD 21601
410-820-6000 • 410-221-0900 • 800-277-9200
www.countryestates.com



### TAYLOR'S ISLAND WATERFRONT

Enjoy all the Eastern Shore of Maryland has to offer from this spectacular property comprised of 500 (±) acres located approximately 20 minutes west of Cambridge. This hunter's paradise offers nearly 3 (±) miles of waterfrontage on Slaughter Creek, Hog Marsh Creek and St. Johns Creek. A private and secluded setting abundant with wildlife and unsurpassed natural beauty with meandering creeks, marshes, woodlands, ponds, and uplands. An exceptional offering.

**$5,400,000.**
Call Pat Jones at the office
or 410-228-6308 evenings.






### BAY HEIGHTS

Cute 3 bedroom, 1 bath bungalow in Cambridge only one block from the Choptank River. Convenient location near Cambridge amenities. Great investment property or renovate for your personal home. **$162,000.**
Call Pat Jones at the office
or 410-228-6308 evenings.